PUBLIC VERSION

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

|  |  |
|---|---|
| **TRACKTHINGS LLC,** | Case No. 6:21-cv-00720-ADA |
| **Plaintiff,** | **JURY TRIAL DEMANDED** |
| **v.** | |
| **AMAZON.COM, INC., AMAZON.COM SERVICES LLC, and EERO LLC,** | |
| **Defendants.** | |

## <u>TRACKTHINGS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER</u>

PUBLIC VERSION

## **<u>TABLE OF CONTENTS</u>**

I.   INTRODUCTION ......................................................................................................... 1

II.   PROCEDURAL HISTORY .......................................................................................... 1

III.  FACTUAL BACKGROUND......................................................................................... 2

IV.  DISCUSSION............................................................................................................... 5

    A.   Legal Standards ................................................................................................. 5

    B.   Amazon Failed to Show Venue is Proper in the Transferee Forum................................. 6

    C.   The Private Factors Weigh Against Transfer .................................................... 6

        1.   The Relative Ease of Access to Sources of Proof Does Not Favor Transfer. ........... 6

        2.   The Availability of Compulsory Process to Secure the Attendance of Non-Party Witnesses Weighs Against Transfer. ................................................ 8

        3.   The Cost of Attendance for Willing Witnesses Strongly Weighs Against Transfer. ............................................................................................. 10

        4.   All Other Practical Factors Weigh against Transfer Because Amazon's Motion Is Not "Reasonably Prompt" ................................................... 11

    D.   The Public Interest Factors Weigh Against Transfer. ..................................... 13

        1.   Administrative Difficulties Flowing From Court Congestion Weighs Heavily Against Transfer. ......................................................... 13

        2.   Local Interest in Having Localized Issues Decided at Home Weighs Against Transfer. ................................................................................ 14

        3.   Familiarity with Governing Law and Conflict of Laws ........................... 15

V.   CONCLUSION............................................................................................................ 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Apple Inc.*,
  979 F.3d 1332 (Fed. Cir. 2020).............................................................................13

*In re Apple, Inc.*,
  581 Fed. App'x. 886 (Fed. Cir. 2014).....................................................................8

*ATEN International Co. v. Emine Technology Co.*,
  261 F.R.D. 112 (E.D. Tex. 2009).........................................................................11

*BillJCo, LLC v. Apple, Inc.*,
  No. 6:21-cv-00528 (W.D. Tex. filed Mar. 1, 2022)..............................................13

*E-System Design, Inc. v. Mentor Graphics Corp.*,
  No. 4:17-cv-00682 (E.D. Tex. filed June 1, 2018) ...............................................11

*EcoFactor, Inc. v. Google LLC*,
  No. 6:20-cv-00075, 2021 WL 1535413 (W.D. Tex. Apr. 16, 2021), .......................7, 8, 10, 14

*F.T.C. v. Multinet Marketing, LLC*,
  959 F. Supp. 394 (N.D. Tex. 1997) ......................................................................12

*Fintiv, Inc. v. Apple Inc.*,
  No. 6:18-cv-00372, 2019 WL 4743678 (W.D. Tex. Sept. 10, 2019) ...............................6, 7, 8

*Flexiworld Technologies v. Amazon.com*,
  No. 6:20-CV-00553 (W.D. Tex. filed Aug. 2, 2021)............................................15

*In re Genentech, Inc.*,
  566 F.3d 1338 ........................................................................................................13

*Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*,
  No. 2:16-CV-0134, 2017 WL 750290 (E.D. Tex. Feb. 27, 2017).........................12

*Konami Digital Entertainment Co. v. Harmonix Music System, Inc.*,
  No. CIV A 6:08-CV-286, 2009 WL 781134 (E.D. Tex. Mar. 23, 2009) ...............12

*Monterey Research, LLC v. Broadcom Inc.*,
  No. 6:21-cv-00541 (W.D. Tex. filed Feb. 21, 2022) ...................................7, 13, 14

*Moskowitz Family LLC v. Globus Medical, Inc.*,
  No. 6:19-cv-00672, 2020 WL 4577710 (W.D. Tex. July 2, 2020)........................10

PUBLIC VERSION

*N5 Technologies, LLC v. Bank of America, N.A.*,
  No. 2:12-CV-685, 2014 WL 558762 (E.D. Tex. Feb. 10, 2014) ........................................12

*Peteet v. Dow Chemical Co.*,
  868 F.2d 1428 (5th Cir. 1989) ...........................................................................................5

*Quest NetTech Corp. v. Apple, Inc.*,
  No. 2:19-cv-118, 2019 WL 6344267 (E.D. Tex. Nov. 27, 2019) ......................................6

*In re Radmax*,
  720, F.3d 285 (5th Cir. 2013) ............................................................................................6

*Stewart Organization, Inc. v. Ricoh Corp.*,
  487 U.S. 22 (1988) .............................................................................................................5

*TQP Development, LLC v. LinkedIn Corp.*,
  No. 2:12-CV-191, 2013 WL 12247813 (E.D. Tex. Mar. 28, 2013) ..................................12

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008).........................................................................................5

*Uniloc 2017 LLC v. Apple Inc.*,
  No. 6:19-cv-00532, 2020 WL 3415880 (W.D. Tex. June 19, 2020) .................................8

*In re Vistaprint Ltd.*,
  628 F.3d 1342 (Fed. Cir. 2010).........................................................................................5

*In re Volkswagen, Inc.*,
  545 F.3d 304 (5th Cir. 2008) ........................................................................................5, 8

*WSOU Investments LLC v. Canon, Inc.*,
  No. 6:20-cv-00981 (W.D. Tex. filed Feb. 25, 2022) .......................................................13

*In re Wyeth*,
  406 F. App'x 475 (Fed. Cir. 2010) ...............................................................................5, 12

**Statutes**

28 U.S.C. § 1404(a) .......................................................................................................5, 6

## I.      INTRODUCTION

Amazon's motion is inconsistent with the facts, its prior statements, and its actions in this case. Until recently, Amazon has been perfectly comfortably litigating this case in this forum. Amazon itself invoked the jurisdiction of the Court, filing a dispositive motion months ago. And by waiting over seven months to file its transfer motion, Amazon ensured that TrackThings would put all of its cards on the table—through contentions, disclosures and *Markman* exchanges— before Amazon decided that it did not want to play anymore. Amazon timed its motion to enjoy all of the benefits of this forum while also aiming for the maximum disruption, *e.g.*, threatening the long-pending *Markman* hearing on May 3. Such gamesmanship should not be rewarded.

Amazon is poised to become Waco's fifth-largest employer, already having at least 3,000 technical and corporate employees in Austin, among over 70,000 employees throughout Texas. At least dozens within this District work on the accused products—including engineers directly knowledgeable about the technology at issue in this case—and they have access to the documents needed for discovery. And for other employees, Amazon has previously conceded that minimal burden exists because, *e.g.*, those "witnesses can work in the Austin office while waiting to testify."

This forum is not an inconvenient forum for this case and, as Amazon has previously stated to the Court, this District "has a significant local interest in Amazon" and a "considerable interest in deciding" Amazon's patent disputes. That Amazon argues the opposite now—after *Markman* briefing has begun—confirms Amazon's motion as a procedural gambit to avoid the May 3 *Markman* hearing, rather than a bona fide request to the Court. Amazon's motion should be denied, and the case allowed to proceed to the scheduled May 3 *Markman* hearing.

## II.      PROCEDURAL HISTORY

TrackThings filed its Complaint on July 13, 2021. D.I. 1. The case has progressed apace since then Amazon responded on September 7, 2021, filing a partial motion to dismiss but without

contesting venue. D.I. 21. TrackThings served infringement contentions on September 21, 2021. Defendants followed with invalidity contentions on December 3, 2021 and then amended contentions on January 20, 2022. The parties exchanged claim construction proposals and support over the winter, reaching agreement on some terms. *Markman* briefing on the remaining terms will be completed this week. Over 648 documents comprising 19,342 pages have been produced. And the *Markman* hearing itself is only one month away, on May 3, 2022. D.I. 31.

Amazon did not inform TrackThings of its intent to seek transfer until February 15, 2022—over seven months after this case was filed, two days before Amazon's opening *Markman* brief. (Declaration of Ryan Singer ("Singer Decl."), Ex. 1). At no point prior did Amazon raise any issue or concern with litigating this case in this District, where Amazon has litigated many other patent infringement cases. Amazon then filed its transfer motion on February 17—on the same day as its opening *Markman* brief (D.I. 40) and only *19 days* before the deadline set by the Court's Second Amended Standing Order Regarding Motions for Inter-District Transfer—with the apparent aim to maximally interfere with this case's schedule and with TrackThings' attempts to litigate this case on its merits.

## III.    FACTUAL BACKGROUND

As of 2021, Amazon had more than 70,000 employees in Texas, including a significant portion within this District. In Austin, Amazon has a technology hub that employs over 3,000. And in February 2021, Amazon obtained a tax break of $9.45 million to subsidize a fulfillment center in Waco. As discussed in greater detail below, dozens of the Amazon employees within this District directly work on the accused products in this case, including both the accused instrumentalities themselves as well as convoyed products that are designed to work with them. This District both is convenient and has a strong localized interest in the resolution of this case.

2

Amazon has explained to this Court how its footprint in this District makes it convenient to litigate here, including because its "witnesses could work in the Austin office while waiting to testify." (Singer Decl. Ex. 2). Amazon has also explained, *e.g.*, when seeking intra-district transfer, that its decision to avail itself of this District's laws, resources, and workforce create a localized interest in deciding patent cases here as well: "Austin [] has a significant local interest in Amazon." (Singer Decl. Ex. 3 at 7; *see also* Singer Decl. Ex. 2 at 9) ("Austin also has a considerable interest in deciding this [patent infringement] case.").

The three Defendants—Amazon.com, Inc., Amazon.com Services LLC, and eero LLC— are all "Amazon" entities. Amazon acquired eero in 2019 to help its customers better connect smart-home devices like the Amazon Echo and Amazon Ring products to the Internet by integrating and bundling those devices with the Accused Products. (*See* Singer Decl. Ex. 4). eero is now fully owned by Amazon and integrated with Amazon— ███████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ███ Moreover, TrackThings explained in its Complaint and contentions, the damages in this case will not just encompass sales of the Accused Products, but convoyed sales of Amazon's smart-home devices too, such as Amazon Echo and Ring devices, which are often bundled with eeros. *See, e.g.*, D.I. 1, ¶ 41.

██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████
██████████████████████████████████████

3

██████████████████████████████████████████████ Amazon has admitted elsewhere that it also has engineers knowledgeable about the connectivity of its Echo (and other smart-home devices at issue in this case) in this District too. (*See* Singer Decl. Ex. 2 at 2) ("The DeviceOS team in Austin comprises 40 engineers of which 11 focus specifically on connectivity features of the accused devices [Echo and Fire TV products]…") Although Amazon fails to identify where its relevant documents are stored, Amazon has admitted that its employees— including those in this District—can readily access the relevant documents from wherever they work.

The only third-party witnesses identified in Amazon's motion are hand-picked alleged prior art witnesses located in California and certain third party companies that may have prior art as well. *See* D.I. 41 ("Mot.") at 8-9. But the prior art identified in Amazon's invalidity contentions and on the face of the patents-in-suit have authors and inventors from all over the world, including in Texas. (Singer Decl. Ex. 8). And many of the companies identified by Amazon as potential source of third-party prior art also have offices here too.

Amazon also omits from its motion other relevant third-party witnesses in this District. For example, eero is a member of the WiFi Alliance, which is based in Austin, Texas, and certifies that products meet industry-agreed standards for interoperability. (Singer Decl. Ex. 9). Certain claims in this case require the Accused Products to implement a "Communication Standard," (*see, e.g.,*'017 Patent, Claim 4) or "Wireless or Wired Standards." (*See, e.g.*, '442 Patent, Claims 2 and 10). Amazon apparently intends to contest that its products meet these claim limitations. TrackThings therefore expects the WiFi Alliance to be an important third party.

TrackThings is an early-stage technology incubator in Murray Hill, New Jersey led by Thaddeus Gabara, a former AT&T Bell Labs engineer with over 120 patents on seminal inventions

for semiconductor, microprocessor, and wireless networking technology. D.I. 1, ¶ 29. This includes inventions from his time at Bell Labs and more recently as part of his start-up efforts at TrackThings, which owns over a dozen of Mr. Gabara's patents. *Id.*, ¶ 30. TrackThings also has a strong interest and preference that this case be decided here, including because it is a more convenient forum and because of this Court's proven track record to expeditiously resolve patent cases before it. This forum—Plaintiff's preferred forum—should be where the present case is heard.

## IV.   DISCUSSION

### A.   Legal Standards

In patent cases, motions to transfer under § 1404(a) are governed by the law of the regional circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). A party seeking transfer "should not delay filing" and must act with "reasonable promptness." *In re Wyeth*, 406 F. App'x 475, 477 (Fed. Cir. 2010); *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989). Otherwise, "the court [will] expend time and effort that might become wasted upon transfer." *In re Wyeth*, 406 F. App'x at 477.

The burden to prove that a case should be transferred falls squarely on Amazon. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010). The burden is not to show that the alternative venue is more convenient, but that it is *clearly* more convenient. *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008). While "clearly more convenient" is not explicitly equivalent to "clear

and convincing," Amazon "must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

### B.      Amazon Failed to Show Venue is Proper in the Transferee Forum

As a threshold matter, transfer under § 1404(a) is only permissible when every Defendant "committed acts of infringement and has a regular and established place of business" within the proposed transferee district. Amazon failed to show this, and its motion accordingly fails a priori.

As it relates to "acts of infringement," Amazon only points to "*eero* provid[ing] the accused mesh-network WiFi products to customers" (Mot. at 4) (emphasis added) in the Northern District of California (the "NDCA"), and says nothing of Amazon.com, Inc. or Amazon.com Services LLC committing any accused acts of infringement in the NDCA. Indeed, Amazon.com Services LLC is never mentioned at all in its motion. Amazon, accordingly, failed to meet its burden, and its motion should be denied.

### C.      The Private Factors Weigh Against Transfer

#### 1.      The Relative Ease of Access to Sources of Proof Does Not Favor Transfer.

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv, Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720, F.3d 285, 288 (5th Cir. 2013) (emphases in original). Here, Amazon's carefully crafted declaration does not actually show that this evidence is *stored* in the NDCA or that such evidence is relatively easier to access in California, confirming that this factor does not support transfer.

First, Amazon does not even mention physical evidence, either in its motion or in its

supporting declaration, let alone the locations of that evidence. In *EcoFactor, Inc. v. Google LLC*, 2021 WL 1535413, at *2 (W.D. Tex. Apr. 16, 2021), this Court found it deficient for transfer purposes that the moving party did not "point with particularity to any relevant physical documents, nor does it confirm the existence of any physical documents located in the" NDCA. *Id.* at *2. The same is true here.

Second, regarding electronic documents, the sole support for Amazon's motion is a statement by its declarant, Dana Lindsay, that "eero engineers generate, maintain, and access technical documents and source code from the offices in which they work, primarily in the San Francisco Bay Area." (Lindsay Decl. ¶ 7). Ms. Lindsay fails to identify—let alone with any particularity—where Amazon actually ***stores*** its documents. Instead, Ms. Lindsay's carefully worded declaration references the generation, maintenance, and access of technical documents and source code, but notably leaves out anything about where the relevant evidence is stored, which is what controls for this factor. *Fintiv*, 2019 WL 4743678, at *2. And even if Ms. Lindsay's statement were construed to encompass document storage, the statement is a general allegation without particularity, vaguely referencing "the San Francisco Bay Area," as the location of documents, without any support for that allegation and without any additional details. This is insufficient to support transfer. *See, e.g.*, *Monterey Rsch., LLC v. Broadcom Inc.*, No. 6:21-cv-00541 at D.I. 70 at p. 6 (W.D. Tex. Feb. 21, 2022) ("[G]eneral allegations unsupported by specific evidence do not tip the scales in a transfer analysis."). Presumably, if there were servers, source code repositories, or the like within the NDCA, Amazon would have referenced those in its declaration and would have done so with more specificity than "the Bay Area". It did not.

At most, the Lindsay Declaration showed that documents are *accessed* from California. But Amazon has admitted that those documents are equally accessible from California, Texas, or

anywhere else since those documents are accessed "from the offices in which they [the employees] work." (Lindsay Decl. ¶ 2). █████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████   As Amazon has also explained to this Court, its California "witnesses could work in the Austin offices while waiting to testify." (Singer Decl. Ex. 2 at 7). This presumably includes their ability to access Amazon documents from within this District with relative ease. Moreover, as Amazon has touted publicly, its employees are able to work remotely from wherever they wish. (Singer Decl. Ex. 11). In sum, all Amazon has proven is that its documents—wherever they may be stored—are equally accessible from *anywhere*. For these reasons, this factor weighs against transfer or is at most neutral.

### 2.     The Availability of Compulsory Process to Secure the Attendance of Non-Party Witnesses Weighs Against Transfer.

"In this factor, the Court considers particularly non-party witnesses whose attendance may need to be secured by a court order." *EcoFactor,* 2021 WL 1535413 at *3, *citing Fintiv*, 2019 WL 4743678, at *5; *Volkswagen*, 545 F.3d at 316; and *Uniloc 2017 LLC v. Apple Inc.*, No. 6:19-cv-00532, 2020 WL 3415880 at *10 (W.D. Tex. June 19, 2020). "This factor 'weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue.*" EcoFactor,* 2021 WL 1535413 at *3*, quoting In re Apple, Inc.*, 581 Fed. App'x. 886, 889 (Fed. Cir. 2014).

Amazon's purported third-party witnesses are cherry-picked names from prior art that happen to be in California. *See* D.I. 41 at 8-9. But the art identified in Amazon's contentions and on the face of the patents-in-suit have authors and inventors from all over the world, including in Texas, within this Court's subpoena power. For instance, "Dynamic Topology Management in

Bluetooth Networks" cited in Amazon's invalidity contentions was published by Suresh Srinivasan, Keyur Desai, Akash Tilak Choudhari, and Dinesh Rajan—a team at Southern Methodist University in Dallas. (Singer Decl. Ex. 12 at 36). In addition, file histories of the patents-in-suit reference prior art patents having inventors from Texas, including, Yong-Woo Chung, Paul McAlinden, and Errol R. Williams, all of whom appear to be within the subpoena power of this Court. (Singer Decl. Exs. 13-18).

Amazon references several companies with headquarters in California from whom they allegedly plan to seek prior-art related discovery. Any intention to seek discovery from these third parties as this time is highly speculative. In any event, many of these companies have a presence in or near this District. Google LLC, and Cisco Systems, Inc. have locations in Austin, Texas. (Singer Decl. Exs. 19-21). Fortinet, Inc. has a location in Plano, Texas, (Singer Decl. Ex. 22), Juniper Networks, Inc. and Cisco Meraki have employees in this District (Singer Decl. Exs. 23-24), and TRW, Inc. should be disregarded as it is located outside the NDCA's subpoena power (Singer Decl. Ex. 25). Amazon's speculation that relevant witnesses are not located here but in California ignores that these entities have connections and employees here, too.

Importantly, Amazon omits that eero is a member of the WiFi Alliance, a likely important third party in this case. (Singer Decl. Ex. 26). The WiFi Alliance certifies that products meet industry-agreed standards for interoperability. (Singer Decl. Ex. 9). Certain claims in this case require the Accused Products to implement a "Communication Standard," (*see, e.g.*,'017 Patent, Claim 4) or "Wireless or Wired Standards." (*See, e.g.*, '442 Patent, Claims 2 and 10). Amazon telegraphed in opening *Markman* brief (*see* D.I. 40 at 16-18), that it intends to contest that its products meet these claim limitations. TrackThings therefore expects the WiFi Alliance to be an

important third party in this case. The WiFi Alliance is based within this District, in Austin, Texas.

(Singer Decl. Ex. 27). This factor weighs against transfer.

### 3.   The Cost of Attendance for Willing Witnesses Strongly Weighs Against Transfer.

"The convenience of witnesses is the single most important factor in the transfer analysis."

*EcoFactor,* 2021 WL 1535413 at *4. "Courts properly give more weight to the convenience of

non-party witnesses than to party witnesses." *Id.*; *Moskowitz Fam. LLC v. Globus Med., Inc.*, 2020

WL 4577710 at *4 (W.D. Tex. July 2, 2020). In fact, "the 'convenience of party witnesses is given

little weight.'" *Id.* at *5.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████ Amazon has admitted in

other cases that it also has engineers knowledgeable about the connectivity of its Echo (and other

smart devices) in this District. (*See* Singer Decl. Ex. 2 at 2) ("The DeviceOS team in Austin

10

comprises 40 engineers of which 11 focus specifically on connectivity features of the accused devices [Echo and Fire TV products.]") That knowledge bears directly on the damages in this case, which encompass convoyed sales of Amazon's Echo smart home devices. *See, e.g.*, D.I. 1, ¶ 41.

The fact that there are *also* potential witnesses located in San Francisco is of no matter— in addition to concealing the availability of witnesses in Texas, Amazon has not shown why its cherry picked employees in San Francisco are more critical than the witnesses located here. Indeed, Amazon's declarant implied that their knowledge bases are interchangeable and that neither is "unique". (Lindsay Decl. ¶ 10). Because Amazon has a large footprint in Texas and virtually unlimited resources, neither it nor its San Francisco witnesses who "could work in the Austin offices while waiting to testify," (Singer Decl. Ex. 2 at 7) are inconvenienced by coming here.

In contrast, it is far more burdensome for TrackThings to litigate in California than Texas. The company and its principals are based in Murray Hill, New Jersey, which is about 20 miles from Newark Airport. Flights from Newark to Austin are faster and cheaper than those to San Francisco. (Singer Decl. Exs. 29-30). Even taking into account the drive from Austin to Waco, the overall trip from New Jersey to this District is far less taxing than traveling to the Bay Area. Hotels are also much cheaper in Waco than San Francisco (*compare* Singer Decl Ex. 31 to Singer Decl. Ex. 32), a fact that may be lost on Amazon, but certainly is not lost on TrackThings and its witnesses. This factor disfavors transfer. *See e.g.*, *E-System Design, Inc. v. Mentor Graphics Corp.*, 4:17-cv-00682, at *12 (E.D. Tex. June 1, 2018) (denying transfer in part because a "proposed transfer would shift the inconvenience of proceedings entirely to [Plaintiff]—a burden compounded by [Plaintiff's] being a smaller company.")

### 4. All Other Practical Factors Weigh against Transfer Because Amazon's Motion Is Not "Reasonably Prompt"

"[L]ate-filed motions to transfer are looked upon with extreme disfavor." *ATEN Int'l Co.*

11

*v. Emine Tech. Co.*, 261 F.R.D. 112, 126 n.4 (E.D. Tex. 2009). At the very least, such delay would weigh heavily against transfer because "[w]ithout reasonable promptness on the part of the movant, a case proceeds, requiring the court to expend time and effort that might become wasted upon transfer." *In re Wyeth*, 406 Fed. App'x. 475, 477 (Fed. Cir. 2010).[1]

Here, Amazon offers no excuse for waiting *over seven months* from being served to file this motion, but instead relegates the timing issue to a footnote and avers that its motion is not late because it is being filed prior to a *Markman* hearing. This misses the point. That Amazon filed its motion *19 days* before the absolute last day it could have filed does not make it expedient. Notably, under the now-operative OGP, Amazon's motion would be considered late. *See* Standing Order Governing Proceedings (OGP) 4.0—Patent Cases ("A motion to transfer anywhere may be filed within three weeks after the CMC or within eight weeks of receiving or waiving service of the complaint, whichever is later. Thereafter, a movant must show good cause for any delay and seek leave of court.") Moreover, Amazon has provided no reason or good cause for why it chose to wait so long to move—when asked, ███████████████████████████████████████████████████
████████████████████████████████████████

Most importantly, the transfer motion—***filed on the same day as Amazon's opening Markman brief***—was timed to maximize the likelihood of delay and disruption. It forced TrackThings to conduct venue discovery and oppose Amazon's motion at the same time it was submitting its own *Markman* briefs and responding to Amazon's claim construction arguments. It now threatens the status of the impending May 3 *Markman* hearing. By delaying until so late in

---

[1] *See F.T.C. v. Multinet Mktg., LLC*, 959 F. Supp. 394, 395-396 (N.D. Tex. 1997) (seven-month delay is not "reasonable promptness" and "likely to upset the discovery and trial schedule and waste judicial resources"); *Konami Digital Ent. Co. v. Harmonix Music Sys., Inc.*, 2009 WL 781134, at *7 (E.D. Tex. Mar. 23, 2009) (six-month delay weighed against transfer); *TQP Dev., LLC v. LinkedIn Corp.*, 2013 WL 12247813, at *6 (E.D. Tex. Mar. 28, 2013) (five-month delay weighed against transfer); *N5 Techs., LLC v. Bank of Am., N.A.*, 2014 WL 558762, at *4–5 (E.D. Tex. Feb. 10, 2014) (six-month delay weighed against transfer); *Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, 2017 WL 750290, at *8 (E.D. Tex. Feb. 27, 2017) (six-month delay weighed heavily against transfer).

these proceedings, if the case is transferred, then a significant amount of party and judicial resources will have been wasted by Amazon's delay—given the difference in California's local rules and this Court's OGP, a substantial amount of work will need to be either redone or at a minimum, amended and supplemented before the case can again move forward. Amazon's unreasonably-late motion should not be condoned, it should be denied.

Moreover, that Netgear moved to transfer its case to the NDCA is also not presently a relevant consideration. As Amazon correctly notes, that motion is still pending, and the case remains in the Southern District of New York today. This factor weighs strongly against transfer.

      **D.**    **The Public Interest Factors Weigh Against Transfer.**

          **1.**    **Administrative Difficulties Flowing From Court Congestion Weighs Heavily Against Transfer.**

The relevant inquiry under this factor is "[t]he speed with which a case can come to trial and be resolved." *In re Genentech, Inc.*, 566 F.3d 1338, 1347; *In re Apple Inc.*, 979 F.3d 1332, 1343 (Fed. Cir. 2020). This Court has consistently recognized that this factor disfavors transfer when comparing itself to the NDCA. *See, e.g.*, *BillJCo, LLC v. Apple, Inc.*, No. 6:21-cv-00528 at D.I. 55 at pp 16-17 (W.D. Tex. Mar. 1, 2022); *Monterey Rsch., LLC*, No. 6:21-cv-00541 at D.I. 70 at pp. 29-32. Consistent with the findings in these cases, from 2016-2020, the median time to trial for this Court is 1.93 years, while that of the NDCA is 4.88 years. (Singer Decl. Ex. 33). This Court additionally found that this "time-to-trial evidence is well-supported by this Court's proven track record to expeditiously resolve patent cases before it." *Monterey Research*, at D.I. 70 at pp. 30-31; *see also WSOU Invs. LLC v. Canon, Inc.*, No. 6:20-cv-00981 at D.I. 123 at pp. 28-29 (W.D. Tex. Feb. 25, 2022). The median time to claim construction in this Court is 0.92 years, as opposed to 1.39 years in the NDCA. (Singer Decl. Ex. 33), and as of December 31, 2021 there are 762 pending cases per judge in this District as opposed to 929 per judge in the NDCA. (Singer Decl.

Ex. 34). Amazon's delay in filing its motion further exacerbates the delay that would result from transfer. *See EcoFactor*, 2021 WL 1535413, at \*5 ("If this case is transferred to the NDCA … transferring this case and establishing a new schedule with a new presiding judge would cause greater delay.") This factor weighs strongly against transfer.

### 2.    Local Interest in Having Localized Issues Decided at Home Weighs Against Transfer.

Defendants have admitted to this Court on several occasions that this District has a significant local interest in Amazon. (*See, e.g.*, Singer Decl. Ex. 3 at 7) ("Austin [] has a significant local interest in Amazon."); (Singer Decl. Ex. 2 at 9). ("Austin also has a considerable interest in deciding this [patent infringement] case."). Since these admissions, this District's local interest in Amazon has grown significantly. Amazon has more than 70,000 employees in Texas, more than 3,000 technical and corporate employees working at its "Austin Tech Hub," and plans to hire thousands more. (Singer Decl. Exs. 35, 6).  In February 2021, Waco approved a tax break of $9.45 million to subsidize a giant Amazon fulfillment center in this District. (Singer Decl. Ex. 37).

There are also significant connections between this forum and the events that gave rise to this suit. As previously noted, there are 71 Texas-based eero employees, certain of which have been involved with the products at issue. (Lindsay Decl. ¶ 10). For instance, Ms. Lindsay declared that "***most*** of the eero employees working in Texas were not involved in, and do not currently work on, the design and development of eero's mesh networking products," indicating that ***some*** of eero's Texas-based employees ***were*** involved in, and ***do*** currently work on, the design and development of eero's mesh networking products. *Id.* (emphasis added). Lindsay further declared that "[t]he ***majority*** of eero's Texas-based remote employees work in customer support roles" indicating that ***some*** work in other roles. *Id.* (emphasis added). Similar to *Monterey Research*, the carefully crafted declaration of Dana Lindsay should be given little weight. 6:21-cv-00541, at D.I.

70 at pp. 34-36 (disregarding a "carefully worded" declaration because the declarant's "generalizations [did] not clarify whether the California reference is restricted to the NDCA").

Defendants are actively seeking to expand their eero Austin presence—they have 9 open job postings on their website for eero employees, 6 of which are for engineers. (Singer Decl. Ex. 36).

With regard to the transferee forum, Amazon provides little more than the vague statement that "the accused eero technology was designed and developed by eero in San Francisco." (Mot. at 13). This is a far cry from the facts in *Flexiworld Techs. v. Amazon.com* which amounted to a "far more significant" presence in the transferee district. D.I. 42 at Ex. 17 (finding that the local interest weighed in favor of transfer to the Western District of Washington which was *both* parties' principle place of business). Defendants here notably do not provide the number of eero employees that work in the NDCA, their respective roles, and why they would hire 71 employees in Texas that do not have any unique knowledge regarding the Accused Products. For the foregoing reasons, this factor weighs against transfer.

### 3.   Familiarity with Governing Law and Conflict of Laws

TrackThings agrees with Amazon that these factors are neutral.

## V.   CONCLUSION

Amazon's late-filed motion to transfer should be denied as not reasonably prompt and for failing to show that the NDCA is a clearly more convenient forum, because each of the public and private interest factors weigh against transfer or are neutral.

Dated:  April 4, 2022                    Respectfully submitted,

                                         GILLAM AND SMITH, LLP


                                         */s/ Melissa R. Smith*
                                         Melissa Richards Smith
                                         GILLAM AND SMITH, LLP
                                         303 South Washington Avenue
                                         Marshall, TX 75670
                                         Tel: (903) 934−8450
                                         Fax: (903) 934−9257
                                         Email: melissa@gillamsmithlaw.com

                                         Timothy K. Gilman (*Pro Hac Vice*)
                                         Christopher M. Gerson (*Pro Hac Vice*)
                                         Binni N. Shah (*Pro Hac Vice*)
                                         Ryan J. Singer (*Pro Hac Vice*)
                                         STROOCK & STROOCK & LAVAN LLP
                                         180 Maiden Lane
                                         New York, NY 10038
                                         Tel: (212) 806−5400
                                         Fax: (212) 806−6006
                                         Email: tgilman@stroock.com
                                         Email: cgerson@stroock.com
                                         Email: bnshah@stroock.com
                                         Email: rsinger@stroock.com

                                         *Attorneys for Plaintiff TrackThings LLC*

PUBLIC VERSION

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2022, I caused a true and correct copy of the foregoing

**TRACKTHINGS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER** to be

filed and served electronically by means of the Court's CM/ECF system in accordance with

Federal Rules of Civil Procedure and/or the Local Rules of this Court, upon the following

counsel of record:

Ravi R. Ranganath
J. David Hadden
Saina S. Shamilov
Vigen Salmastlian
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Tel: (650) 988-8500
Fax: (650) 938-5200
Email: rranganath@fenwick.com
Email: dhadden@fenwick.com
Email: sshamilov@fenwick.com
Email: vsalmastlian@fenwick.com

Eric B. Young
FENWICK & WEST LLP
555 California Street
12th Floor
San Francisco, CA 94041
Tel: (415) 875−2300
Fax: (415) 281−1350
Email: eyoung@fenwick.com

Deron R. Dacus
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Tel: (903) 705−1117
Fax: (903) 581−2543
Email: ddacus@dacusfirm.com

*Attorneys for Defendants Amazon.com, Inc.,*
*Amazon.com Services LLC, and eero LLC*

/s/ Melissa R. Smith
Melissa Richards Smith

17